*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-06341-GHK (ASx) | Date | November 4, 2016 |
|---|---|---|---|
| Title | *Jeffrey Ayala v. Cox Automotive, Inc., et al.* | | |

| Presiding: The Honorable | GEORGE H. KING, U.S. DISTRICT JUDGE | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** Motion to Remand [Dkt. 8]

Plaintiff Jeffrey Ayala moves to remand this wrongful termination suit to Los Angeles County Superior Court. We have considered the papers filed in support of and in opposition to the Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. Accordingly, we rule as follows:

**I.    Background**

In 1997, Plaintiff began working for Cox Automotive, Inc., Manheim Remarketing, Inc., and Greater Nevada Auto Auctions, LLC (collectively, "Entity Defendants"). Doc. 1-1, ¶ 8. In October 2014, Plaintiff's supervisor Scott Hurst presented him with a choice: either relocate from Nevada to Riverside, California, or have his position eliminated. ¶ 10(a). Hurst offered Plaintiff a $10,000 relocation allowance, and asked that he move by January 2015. ¶ 10(a), (b). Plaintiff felt that the allowance was insufficient and the deadline too short, and raised these concerns with the company's senior vice president. ¶ 10(c). Upon learning about Plaintiff's complaint, Hurst warned Plaintiff not to go around him again. *Id.*

Plaintiff experienced other difficulties with the relocation offer. When Plaintiff visited Cox's Riverside office, he was shown his predecessor's office and told that it would be his. *Id.* After he relocated, however, he was assigned to a different office, which had a collapsed ceiling and mold on the walls and tables. *Id.* Plaintiff complained to Hurst that the office was not in compliance with OSHA standards, but Hurst did nothing about the situation for nine months. *Id.*

In March 2015, Plaintiff complained to Hurst that diesel generators at the Riverside location had been out of compliance with state and local regulations for more than a year. ¶ 10(e). Hurst told him not to worry about it, and instructed him to "[q]uit asking questions." *Id.* In May 2015, Hurst assigned Plaintiff a project beyond the realm of Plaintiff's expertise and job description, and asked him to complete it in four days. ¶ 10(f). Plaintiff was forced to hire a subcontractor with his own funds to complete the project. *Id.*

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-06341-GHK (ASx) | Date | November 4, 2016 |
|---|---|---|---|
| Title | *Jeffrey Ayala v. Cox Automotive, Inc., et al.* | | |

On May 29, 2015, Hurst gave Plaintiff a performance improvement plan and scheduled a meeting to discuss it. ¶ 10(g). Hurst indicated that Plaintiff needed to improve his communication skills, and complained that Plaintiff showed a lack of decisiveness. *Id.*

In August 2015, Hurst called Plaintiff into his office. ¶ 11(a). Two security guards were present. *Id.* Hurst presented Plaintiff with a corrective action form, which stated that Plaintiff had received notices on February 6, February 11, April 16, and May 29, 2015. *Id.* Plaintiff denies receiving any of these notices. *Id.* After this meeting, Hurst terminated Plaintiff's employment. *Id.*

On July 20, 2016, Plaintiff filed a complaint Los Angeles County Superior Court. Doc. 1-1. The complaint asserted four claims against the Entity Defendants: (1) breach of express contract, (2) breach of implied contract, (3) wrongful termination in violation of public policy, and (4) violation of Cal. Labor Code §§ 970 and 1102.5. *Id.* at 9–12. The complaint also set forth a claim for intentional infliction of emotional distress ("IIED") against Defendant Hurst and the Entity Defendants. *Id.* at 12.

On August 22, 2016, Defendants removed the case pursuant to 28 U.S.C. § 1441, asserting federal jurisdiction under 28 U.S.C. § 1332. Doc. 1. Defendants contend that complete diversity exists because Plaintiff is a citizen of California and the Entity Defendants are citizens of Delaware and Georgia. *Id.* at 4–5. Defendants concede that Defendant Hurst is, like Plaintiff, a citizen of California, but contend that his citizenship is irrelevant because he was fraudulently joined. *Id.* at 5–7. Plaintiff disagrees, and moves to remand. Doc. 8.

**II.     Legal Standards**

    **A.     Removal**

A civil case brought in state court may be removed to the federal court in the district where the action is pending if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Removal of an action arising under state law is not proper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." § 1441(b)(2). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." § 1447(c).

Section 1441 is strictly construed against removal. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002). The "strong presumption" against removal "means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted). Federal courts must remand a case to state court "if there is any doubt as to the right of removal." *Id.*

    **B.     Fraudulent Joinder**

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-06341-GHK (ASx) | Date | November 4, 2016 |
|---|---|---|---|
| Title | *Jeffrey Ayala v. Cox Automotive, Inc., et al.* | | |

In the Ninth Circuit, "[j]oinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quotation marks, alterations, and citation omitted). "[T]he fraudulent joinder inquiry focuses on the validity of the legal theory being asserted against the non-diverse defendant," without requiring a finding that the plaintiff acted with fraudulent intent. *Davis v. Prentiss Props. Ltd., Inc.*, 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999) (quotation marks and citation omitted).

If it is at all doubtful "'whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the case in state court.'" *Ballesteros v. Am. Standard Ins. Co. of Wisc.*, 436 F. Supp. 2d 1070, 1072 (D. Ariz. 2006) (quoting *Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944)). Even a "'glimmer of hope' that plaintiff can establish [the] claim is sufficient to preclude application of [the] fraudulent joinder doctrine." *Id.* (quoting *Mayes v. Rapoport*, 198 F.3d 457, 466 (4th Cir. 1999)).

**III     Analysis**

**A.     Fraudulent Joinder**

Plaintiff argues that diversity is lacking because Plaintiff and Defendant Hurst are both citizens of California. Doc. 8 at 7. Defendants respond that that Hurst was fraudulently joined and should be ignored for purposes of the jurisdictional analysis. Doc. 9 at 10–14. Defendants contend that the IIED claim – the only claim asserted against Hurst – is untenable for two reasons. First, they argue that the claim is barred by *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55 (1996), which held that "a simple pleading of personnel management activity is insufficient to support a claim of [IIED], even if improper motive is alleged." *Id.* at 80. Second, they argue that the claim is barred by *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876 (2008), which held that the California Workers' Compensation Act ("WCA") displaces the tort of IIED with respect to extreme and outrageous conduct that occurs "at the worksite, in the normal course of the employer-employee relationship." *Id.* at 902.

Defendants' arguments are well taken. *Janken* establishes that an employer's personnel management decisions cannot give rise to a claim for IIED. That is because "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." *Janken*, 46 Cal. App. 4th at 80. "'Numerous federal courts have applied *Janken* to foreclose claims for IIED when the supervisor's conduct falls within the confines of her managerial role.'" *Dupree v. Apple, Inc.*, No. 16-CV-00289-LHK, 2016 WL 4191653, at *7 (N.D. Cal. Aug. 9, 2016) (quoting *Gomez v. Rehabilitation*, 2016 WL 370692, *3 (C.D. Cal. Jan. 29, 2016)).

Plaintiff's IIED claim against Hurst is based solely on Hurst's managerial actions: specifically, his actions in requiring Plaintiff to relocate on short notice, giving Plaintiff an office in poor condition, reprimanding Plaintiff for asking work-related questions, assigning Plaintiff a project beyond the realm of his expertise and job description, giving Plaintiff a performance improvement plan, and terminating

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-06341-GHK (ASx) | Date | November 4, 2016 |
|---|---|---|---|
| Title | *Jeffrey Ayala v. Cox Automotive, Inc., et al.* | | |

Plaintiff's employment. Doc. 1-1, ¶ 10(a)–(g). Since all of this conduct "f[ell] within the confines of [Hurst's] managerial role," *Dupree*, 2016 WL 4191653, at *7, it could not give rise to an IIED claim.[1]

Defendants' preemption argument is also meritorious. The WCA provides a remedy for employees who sustain physical or emotional injuries during the course of their employment (Cal. Labor Code §§ 3600), and states that this remedy shall be exclusive (§§ 3601–3602). In *Miklosy*, the California Supreme Court held that the WCA displaces the common law tort of IIED with respect to extreme and outrageous conduct that occurs "at the worksite, in the normal course of the employer-employee relationship." 44 Cal. 4th at 902. Since Plaintiff's IIED claim is based solely on workplace conduct, it is preempted by the WCA.

Plaintiff alleges that Hurst violated Cal. Labor Code § 970,[2] and suggests that this somehow allows him to avoid the WCA's exclusivity provision. Doc. 8 at 13–14. Plaintiff is mistaken. Courts have repeatedly applied *Miklosy* to dismiss workplace IIED claims where the employer's conduct was alleged to have violated a fundamental public policy embodied in a state statute. *See Langevin v. Fed. Exp. Corp.*, No. CV 14-08105 MMM FFMX, 2015 WL 1006367, at *10 (C.D. Cal. Mar. 6, 2015) ("Following the California Supreme Court's holding in *Miklosy*, California courts have held that California IIED claims are barred by WCA's exclusivity provisions, even if they are based on conduct that allegedly violates a fundamental public policy") (collecting cases). Indeed, *Miklosy* itself concerned workplace conduct that allegedly violated the California Whistleblower Protection Act. Nonetheless, the California Supreme Court held that the WCA applied to preempt an IIED claim based on this conduct. *Miklosy*, 44 Cal. 4th at 903; *see also Shoemaker v. Myers*, 52 Cal. 3d 1 (1990) (WCA preempted IIED claim, notwithstanding allegations that employer's misconduct violated specific statutes and fundamental public policy).

In sum, Plaintiff's IIED claim is clearly untenable under California law. Since there is not even a "glimmer of hope" that Plaintiff can recover from Hurst, we conclude that Hurst was fraudulently joined, and disregard him for purposes of the jurisdictional analysis.[3]

---

[1] Plaintiff argues that the question whether Hurst's conduct was extreme and outrageous is a question for the jury. Doc. 8 at 14–15. In fact, "it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Chang v. Lederman*, 172 Cal. App. 4th 67, 87 (2009) (citation omitted). As explained, California courts have consistently held that personnel decisions cannot be so regarded. *See, e.g.*, *Janken*, 46 Cal. App. 4th at 80.

[2] This section prohibits the use of fraudulent means to "influence, persuade, or engage any person to change . . . from any place outside to any place within the State . . . for the purpose of working in any branch of labor[.]"

[3] Plaintiff argues that, even if his complaint currently fails to state a tenable claim against Hurst, remand is proper because he may be able to amend the complaint to state such a claim. Doc. 8 at 11. Plaintiff fails, however, to identify any additional facts or legal arguments he would include in such an

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-06341-GHK (ASx) | Date | November 4, 2016 |
|---|---|---|---|
| Title | *Jeffrey Ayala v. Cox Automotive, Inc., et al.* | | |

**B.     Other Issues**

Plaintiff also argues that Defendants have failed to produce evidence establishing Plaintiff's domicile or the amount in controversy. These arguments lack merit.

      1.     Domicile

.      The citizenship of a natural person is "determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While "[r]esidence alone is not the equivalent of citizenship . . . the place of residence is *prima facie* the domicile." *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). It is presumed that a natural person's residence is also his domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *See id.* at 519; *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

Plaintiff alleges that he "is, and at all times mentioned in the Complaint was," a California resident. Doc. 1-1, ¶ 1. This allegation gives rise to a presumption that Plaintiff is a California citizen. Plaintiff does not present any evidence to contradict the presumption of California citizenship; indeed, he does not even deny that he is a California citizen. *See* Doc. 8 at 11 ("[D]efendants . . . lack a proper legal basis for removal because there is not complete diversity, inasmuch as plaintiff and Hurst are both Californians."). Nor is there anything to suggest that Plaintiff might be a citizen of Delaware or Georgia, where Entity Defendants are domiciled. We therefore conclude that complete diversity exists between Plaintiff and Entity Defendants.

      2.     Amount in Controversy

A party seeking to remove a civil action to federal court must make a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). When a party seeks to remove an action on the basis of federal diversity jurisdiction, it must plausibly allege that the amount in controversy is satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014). The "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. If the allegation is contested, the removing party must show, by a preponderance of evidence, that the amount-in-controversy requirement is satisfied. *See* 28 U.S.C. § 1446(c)(2)(B); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

---

amendment. The Court will not remand based on the speculative possibility of a curative amendment. *Cf. Wexler v. Jensen Pharm., Inc.*, No. CV1503518ABAJWX, 2015 WL 6159101, at *7 (C.D. Cal. Oct. 20, 2015) (refusing to remand based on the possibility of a curative amendment where Plaintiff failed to identify any additional facts it would include in amendment).

*FILED*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-06341-GHK (ASx) | Date | November 4, 2016 |
|---|---|---|---|
| Title | *Jeffrey Ayala v. Cox Automotive, Inc., et al.* | | |

Here, Plaintiff seeks to recover three types of damages: economic damages (including lost earnings), non-economic damages (including damages for pain and suffering), and punitive damages. Doc. 1-1, ¶ 12. Defendants have produced evidence that Plaintiff earned $116,897 per year at the time of his termination. Doc. 10 at 5. Plaintiff does not allege that he has obtained work since he was terminated by Defendants, and more than a year has passed since the date of termination. Thus, if Plaintiff prevails on his claim, he will likely be able to recover at least one years' salary, which would put his recovery above the jurisdictional threshold. The award would be larger still if Plaintiff were awarded non-economic or punitive damages. Defendants have borne their burden to show, by a preponderance of the evidence, that the amount-in-controversy in this case exceeds $75,000.

**IV     Conclusion**

Plaintiff's motion to remand (Doc. 8) is **DENIED.**

**IT IS SO ORDERED.**

:

Initials of Deputy Clerk    DG for PS